The next case on the docket this morning is number 520-0250, Hayes v. St. Anthony's Memorial Hospital et al. Arguing for the appellant's St. Anthony Memorial Hospital, Dr. Workman and Benuti Orthopedic is Hugh Griffin. Arguing for the appellee, Sherry Hayes, Independent Administrator of the Estate of Bradford Hayes is Joshua Weisberg. Each side will have 15 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Please note only the clerk of the court is permitted to record these proceedings. Good morning, gentlemen. How are you all? Fine, thank you, Judge. Just for the record and to let you know, Justice Barbaras sits on the Workers' Compensation Division at the appellate level. They are currently holding court today as we are, that's why he is not here today. He will watch and listen to the oral arguments and we plan getting together with him in the near future to review the cases and make our votes accordingly. Just want to let you all know why Justice Barbaras wasn't here today. Is everyone ready to proceed? Yes, Your Honor. And it's Mr. Griffin, correct? You're for the appellant? Yes, Your Honor. Then go right ahead. May it please the court, this is an appeal from a denial of the defendant appellant's motion to transfer this case from St. Clair County to Effingham County under the doctrine of interstate form nonconvenience. Plaintiff filed the suit in St. Clair County. Plaintiff herself is a resident of Richland County. The allegation is that negligent medical postoperative care was rendered to plaintiff's decedent Mr. Bradford Hayes at St. Anthony's Memorial Hospital in Effingham County. The complaint further alleges that that negligent care was rendered by the St. Anthony's nurses. Discovery has revealed that there were five nurses involved in Mr. Hayes's care all reside and work in Effingham County. There's an allegation by the surgeon himself. That's the defendant, Dr. Workman, who operated on Mr. Hayes at St. Anthony's in Effingham County. Finally, there's an allegation of negligence against Dr. Ashley Helen Malcolm, who rendered care to Mr. Hayes while working remotely from her home in Belleville, St. Clair County, Illinois, as St. Anthony's on-call hospitalist. Plaintiff urged, and I think it's fair to say that the circuit court agreed, that Dr. Malcolm's remote care gave rise to a cause of action for malpractice in St. Clair, at least the cause of action against her, and that she engaged in the negligent practice of medicine in St. Clair County. So we have, we bring to the court kind of a fundamental issue of how we're going to analyze the increasing world of remote care and how it interplays with the foreign non-convenience doctrine. We believe the court erred in accepting plaintiff's characterization of the remote care, and it skewed his analysis of all the relevant public and private interest factors, certainly in terms of a cause of action. No cause of action for malpractice against Dr. Malcolm arose until her treatment decisions were communicated to St. Anthony's in Effingham County. Those treatment decisions were implemented at St. Anthony's in Effingham County, and those decisions ultimately, or allegedly, caused injury to Mr. Hayes in Effingham County. And she's a resident of St. Clair County, is that correct? I'm sorry, Judge. Dr. Malcolm is a resident of St. Clair County? She is. Does she do most of her practice from her residence as telemedicine? I think the record shows that she does a significant amount of that, and that she also treats patients on a personal, in-person basis. I believe it's at St. Elizabeth's in St. Clair County. So, most of her practice is in St. Clair with St. Clair patients? I don't know the percentages of it, but we would urge, and that's an argument that's made by plaintiff, and I think the circuit court referred to it as well, that while she does do other, she does treat patients, other patients, either remotely or in-person in St. Clair County. But I would refer you to the Shaw decision, where the argument there was made, well, there was a case about negligence in the parking lot by the employee and handling, how he handled the grocery carts and caused injury. And the argument was made, well, you have stores in St. Clair County, and you have employees with grocery carts. And so, why isn't that significant here in terms of your FNC motions? And the holding there was, well, the record shows that the training was done on an individualized store basis. And certainly, when it comes to medical care, Dr. Malcolm's care to Mr. Hayes was an individualized patient decision, had nothing to do with any other decision that she might make in another case, whether it's in St. Clair County or otherwise. So, again, I don't think that's a factor that should be given significant weight. It also- Did she join in the motion to transfer Dr. Malcolm? She did not. She did not. We cited cases that show that it's not a fatal impediment that all defendants don't join in motion. She did not have, and the circuit court did not have the benefit of your decision in Brandt, in which you held that the court gives this discretion in failing to transfer a case from St. Clair County, I believe it was to Monroe County, even though the defendant physician was a resident of St. Clair County. So, that's a fact that still gets weighed, no question about it, her residence. But we believe the error here was in considering her medical care and the treatment that she rendered and the cause of action against her as occurring in St. Clair County. I mean, when you think about it, it's just fortuitous where the remote physician might be. In this case, she was in St. Clair County. In another case, she might be in Lake County or Jefferson County, or she might be- Or out of state? Or out of state. Or out of state. Or out of state, or in a car traveling through two counties. In our view, again, her residence is a factor. But as far as the care she rendered, the issue should be where the care was directed, where the care was rendered, and where an injury occurred. I mean, it's somewhat akin to what we're doing today. I mean, this is an oral argument in the 5th District Appellate Court, Mount Vernon, Jefferson County, Illinois. The fact that I'm sitting in Chicago doesn't change that. And I think that's where the analysis went wrong in this case. The fact that Dr. Malcolm was sitting looking at her iPad or PC in St. Clair County doesn't change where the medical care was rendered. It shouldn't change the analysis. It should be really just about the same as if she was there physically giving- Would you address that issue? And you made some interesting arguments along that line. I would like to hear you pursue that. Right. So we believe the concept that we're arguing is recognized in other aspects of the law. We cited to the court the Interstate Medical Licensure Compact. That's determining what medical board should have jurisdiction over physicians practicing in different states. But there, the statute expressly provides the practice of medicine occurs where the patient is located at the time of the patient-physician encounter. And we would say that it wasn't deciding FNC, but that principle applies here. And we cited the costal case. That's a case on jurisdiction. A suit by an Illinois plaintiff against a Michigan diagnostic laboratory. And Michigan said, hey, we did all our activities in Michigan. We misdiagnosed your tissue sample, but we did that in Michigan. The court said, no, you purposely directed your activities to an Illinois patient. You knew their diagnosis. You knew your diagnosis would be the basis for treatment of that patient in Illinois. And I quote, we believe you actually provided medical treatment, close quote, in Illinois, caused injury to an Illinois patient. If all of that's true, with respect to Dr. Malcolm here, she purposely directed her activities to Mr. Hayes at St. Anthony's in Effingham County. She knew her diagnosis or her orders would be the basis for Mr. Hayes's further treatment in Effingham County. And we conclude that as the court didn't cost her, that means she actually provided care in Effingham County. And that's the way the FNC should be analyzed. Now, again, she is a resident and that's a factor that has to be weighed. But I believe if you, where the court went wrong and why it's so important is, as the LE case, A-L-L-E said, that was Justice Burke, now Chief Justice Ann Burke, setting forth that, you know, when you weigh these factors, you do so with the focus of the case in mind. And in Shaw, you said the same thing. You did it a little different language, saying we focus on the heart of the issue. Even in our analysis of the private factors. And so, I mean, the A-L-L-E case was really an extreme example. That was a case where there was actually injury in Cook County. There was an abduction and then an assault in Stevenson County, and then another incident in Cook County. So there was arguably a cause of action that arose in Cook County. But the court said, now the focus of this case is on defendant's conduct in Stevenson County, resulting in the ultimate injury. We believe the same thing here. The focus of this case, the heart of the issue, is the medical care rendered to Mr. Hayes in Eppingham County by all the defendants, including Dr. Malcolm. We probably don't have time to go into all the individual factors. But- Well, you've agreed to matter well. And we've read the briefs, don't we? Right. So the basic point is that if you analyze this remote care in the way we believe it should be analyzed, as care that was rendered in Eppingham County, treatment that was given in Eppingham County, that changes the analysis of all the factors, even the private interest factors. Yes, it's true that Dr. Malcolm resides in St. Clair County. But given that the focus of this case is care she rendered to a patient in Eppingham County, we submit it's appropriate that she be called to defend that care in Eppingham County. And so, again, when you take the focus of the case, put it into the pot, and balance the totality of all the factors, the private and public interest factors, you've made it clear, and other courts have made it clear, they don't all have to strongly favor transfer. But when you put them all together, we would respectfully submit that with the proper focus and the proper heart of the issue, being the medical care rendered in Eppingham County, that for all the reasons set forth in the brief, that the court did abuse this discretion here. And then the balance of the totality of those factors, considered together, strongly favors transfer to Eppingham County. Unless there's any further questions, I don't know if I'm allowed to reserve my time for rebuttal. I don't think so. I think you need to use it now. I have to use it now? Okay. Hang on one second. Again, I don't know. I think the brief got into a lot of the specifics, but certainly the public interest factors here weigh heavily in favor of Eppingham County. This is Eppingham County's hospital. The location of the injury giving rise to the litigation is the most important factor in giving any county a local interest, which you stated in Brandon, it's true here. I believe it's the only, I think it is the only hospital in Eppingham County, but certainly it's the citizens of Eppingham County that have a paramount interest in the quality of care that's rendered in their quality in their hospital. Now there's an institutional claim here about whether the hospital should have remote physicians that are as far away as Dr. Malcolm was, but that's a decision that was made again in Effingham County. That's an issue that should be resolved by the citizens of Eppingham County who rely on that hospital in that county for their care. I think I've made the point I wanted to make. I think it's kind of the world of remote medicine meets the foreign non-convenience doctrine. How do we analyze that? How do we analyze this remote care? It's going to come up again, I'm sure. Remote care is expanding and needed in many rural areas. So I think the case is important for that purpose and we respectfully submit that the court here improperly analyzed it and that for all practical purposes, Dr. Malcolm's conduct or care should be considered as being rendered in Effingham County. And when that becomes the proper focus of the case, then I think weighing all the factors together, the balance comes out strongly in favor of Eppingham County. Thank you very much. Thank you, counsel. Obviously, you'll have time for rebuttal after Mr. Weisberg. Is it Weisberg or Weisberg? Weisberg. Weisberg, after he's done. Go right ahead, sir. All right. Thank you, Your Honor, and may it please the court. At issue is whether Judge Coulter abused his discretion by holding that the defendants failed to meet their burden of showing exceptional circumstances exist that require transferring this case from St. Clair to Effingham. In Judge Coulter's 27-page written order denying the defendant's motion, he explained this is a case involving scattered parties, including three defendants that are residents of St. Clair and yet a fourth defendant that's located much closer to St. Clair than Effingham in neighboring Madison County. He discussed that the witnesses are scattered, including several located in St. Clair, and he discussed that there are numerous significant connections to St. Clair, including but not limited to that Dr. Malcolm's alleged negligent conduct occurred there while she was working as a remote hospitalist from her home in Bellevue in Belleville. And he explained that looking at the totality of the circumstances, this was not a close call. This was this did not come down to a single stack, including the fact that Mr. Griffin would like to highlight as the appeal. Judge Coulter expressly stated twice in his order that he was not giving undue weight to that fact. And he explained that looking at the case in its totality, that St. Clair had a significant connection to the case. And he discussed all of the case law that this court and others have recently issued on the topic of four of nine and analyzed it thoroughly in reaching that conclusion. Beginning with the parties, I mentioned that three of the five defendants are residents of St. Clair, and we've discussed Dr. Malcolm, who lives in Belleville. And just to be clear, in addition to the fact she has not moved to transfer, joined in the motion because we know St. Clair is her home forum and the most convenient forum for her, she does exclusively work in St. Clair County. Her answers to interrogatories state that when she sees patients in person, it's always at St. Elizabeth's Hospital in Belleville. And while she has privileges in other counties, she only provides care to those patients remotely from her home in Belleville, as she did in this case. And specifically in this case, what Dr. Malcolm did, and this is pre-COVID, this was a decision that she was going to provide hospitalist care from her home for postoperative patients. And so while working as a remote hospitalist from her home in Belleville, she received a phone call informing her that a patient that had just undergone a cervical fusion was having difficulty breathing. And from her home in Belleville, she accessed his chart via Meditech, she formed her differential diagnosis, she gave a verbal order to administer a scopolamine patch, she electronically entered her order into the chart. She chose not to request that an airway evaluation be performed. She chose not to call the rapid response team. She chose not to notify the attending surgeon of the patient's respiratory distress. And shortly thereafter, that patient who was suffering from a progressive airway obstruction due to a cervical wound hematoma, went into cardiac arrest, which led to his death. So count one of our complaints and the center of our case is that Dr. Malcolm's negligent conduct from her home in Belleville led to Mr. Hayes' death. And what this case centers on, the focus of this case, and what we view as the primary negligence was committed by a St. Clair County resident from her home in St. Clair County. And the fact that she was in St. Clair is not fortuitous. You can imagine there could be circumstances when remote care is rendered from a fortuitous location, but not in a case where a doctor has, the decision has been made that a doctor, and again, pre-COVID, is going to provide all of her hospitalist care outside of her home county, remotely from her home. Every time she does it, it's from where she lives at her home. That's her work location. And that's a permanent work location for her for whenever she's providing remote care. So there's nothing fortuitous about the fact that she was at her home, as she always is, practicing remote hospitalist care in this case. Now, I mentioned that the defendants argue on appeal, and really the only issue they raised in their brief is that Judge Colker gave undue weight to the fact that Dr. Malcolm was committing her negligent conduct while she was home in St. Clair County. And Judge Colker, as I mentioned, on two separate occasions said, no, I am not giving undue weight to that fact because there are many significant connections in this case to St. Clair County. Judge Colker noted that two other defendants are also residents of St. Clair County. He noted that defendant CEP, America Illinois Hospitalist, is a St. Clair County resident that employs 18 medical providers in St. Clair that provide care to St. Clair residents, including Dr. Malcolm, as well as its medical director, Dr. Matani, who is a St. Clair resident and has been identified as a witness in this case. Like Dr. Malcolm, defendant CEP has also not joined in the motion to transfer. We have two defendants that are not claiming that Effingham is a more convenient forum. They're both residents of St. Clair, and especially with respect to Dr. Malcolm, it's her home forum. That's the most joining in this motion. Judge Colker also noted that not only does St. Anthony's maintain its registered agent in St. Clair and is thereby a resident, but its lawyers are located just two blocks from the St. Clair County courthouse. So when this case goes to trial, its lawyers are going to be across the street from the St. Clair County courthouse, clearly the most convenient location for them. He noted that defendant Dr. Workman, the only other individual defendant besides Dr. Malcolm, lives and works significantly closer to St. Clair than to Effingham. He lives in Madison County. He's twice as far from the courthouse in Effingham as he is to St. Clair, and he only works, he filed an affidavit explaining he only works in Madison County. He may have used to, in the past, provide services in Effingham. He no longer does. What about counsel's argument about the telemedicine performed in Effingham and that we should deem it so? Thank you, your honor. So I think that I have two responses to that. Number one, I think there are, I think an act occurs where an act occurs. So it's hard to say Dr. Malcolm didn't do something in St. Clair when she is in St. Clair. And I think I cited from a case, the Prince case, where they explained the same concept, that when a doctor is somewhere taking a phone call and giving medical advice from that location, that their action occurs in the location where they are giving the speech or giving the order or forming their differential diagnosis. Its effect occurs somewhere else where the listener is. But in this case, the acts, the actions of Dr. Malcolm, it's hard to argue that they're not occurring in St. Clair County where she is and she's taking all of those actions and looking at the chart from her home in St. Clair and entering in orders from her home in St. Clair. As to what significance the remote care may have in a given case, I think that's a case by case thing. There probably are going to be cases where there are fortuitous circumstances where a doctor just happens to be in a location. Unlike in this case where Dr. Malcolm is permanently stationed working from home and she provides hospitalist care and there was nothing fortuitous about her I don't agree that that is the controlling issue in this case because there are so many connections to St. Clair County. I don't think that Mr. Griffin can find another case where there are three defendant residents, including a defendant physician, of the county where there are numerous occurrence witnesses in the county. The witnesses are scattered where neither of the individual doctors being sued live in the county they're trying to transfer this case to and neither of them physically work there. We've got one in St. Clair and you've got one in Madison. The one in Madison is much closer to St. Clair. Where in Madison does he live? You know, I put his exact address in the brief and the facts were that it was a 45-minute drive for him to the St. Clair County Courthouse and an hour and a half drive to the Effingham Courthouse. As Judge Colbert astutely observed, even though Dr. Malcolm filed an affidavit and is seeking to transfer, he never said in his affidavit Effingham is more convenient. He simply said that it would be inconvenient for me to go to a trial in St. Clair. The same thing that the court rejected in the Foster cases. The fact of trial, not the location of trial, that would be inconvenient to Dr. Workman and it would not have been well taken for Dr. Workman to have made the claim and he never did, even after it was pointed out that he never had made the claim that somehow it would be more convenient for him to go twice as far to Effingham from his house in St. Clair when he doesn't need to practice there anymore. So I think that it's tempting to go down the road that Mr. Griffin is trying to lead us of making this case all about how are we going to handle remote care. But I believe in this case that given that the judge clearly said he was not giving undue weight to that, it was just one of many connections, that is not the sole basis of this decision. The decision by Judge Colbert was based on the uh, including scattered parties, including three defendant residents in St. Clair, two of whom provide extensive services to St. Clair residents. I won't quote what the appellate courts have said on the issue of when a medical provider, such as CEP in this I put in the brief that Hackle in the first district, Foster v. Hillsborough, which is very analogous to this case and cannot be distinguished by Mr. Griffin, I don't believe. And in fact, this case is much stronger than Foster on the facts in terms of the connection to the county. So Hackle and Foster, as well as this court's recent decision in Evans, every one of those noted that where a medical group is providing care to residents of the county where the case was filed, that that county has an inherent interest in the outcome of that case. And so Evans is another analogous case. I mentioned that the witnesses are scattered with four that live or work in St. Clair County and many of whom are out of state. And as Buechner recognized, it would be more convenient for them to utilize the airports through St. Louis. So Judge Colbert also explained that the scattered witnesses, and we know what they said when you have a case involving scattered witnesses, it's an abuse of discretion to transfer that case if it has a predominant connection to one location. And here we have scattered witnesses and parties and conduct in St. Clair. That's certainly not the case. And the last point I'll make is just with respect to Kostal, that case involving personal jurisdiction, that clearly did not stand for the proposition that it would be inappropriate or even better for Michigan to decide the conduct of Michigan doctors. It simply said it wasn't disallowed and could be permitted that Illinois could also be a proper forum. But that was a personal jurisdiction case that's really on the side of the home. And I see my time is up. So well, thank you, counsel. Mr Griffin rebuttal. Yes, your honor. It is true that Judge Coker said he wasn't over waiting Dr. Malcolm's St. Clair County residents. But if you read his order, he's clearly he clearly accepted the argument that the cause of action against her arose in St. Clair County and that she engaged in the negligent practice of medicine in St. Clair County. And so that's and I think you'll see that you mentioned her residents almost in every analysis of almost every one of the factors. And so that's, we believe, the fundamental error that the cause of action arose and the negligence occurred where the care was directed, where the care was rendered, and where the injury occurred. And that's Effingham County. And so that's what we believe skewed the whole analysis of all the factors. And we can go into some of the individual ones. But, you know, we're talking about the hospital here. I mean, for all practical purposes, the hospital are these five nurses, and they're 100 miles away. This is not a contiguous county case. This is a case three counties away from St. Clair County and would put a burden on these nurses to travel really round trip 200 miles a day. There's an allegation of institutional negligence. There's no specification as to who's involved, but it would have to be I assume, members of the board, or medical staff that made a decision to again, practicing in Effingham County at St. Anthony's. The plaintiff herself, I know I can't argue that it's inconvenient for her to be in St. Clair County, but Richland County is a lot closer to Effingham County, I think by 50 miles. So again, you can consider that it would be convenient for her. Now you do have Dr. Malcolm and you do have Dr. Workman. But again, they're being sued for their conduct in Effingham County that resulted in an injury in Effingham County. And I know Judge Coker said, well, it's really inconvenient for these doctors as a trial no matter where it is. To us, that's just another reason if that's the case, that's just another reason why the case should be tried in Effingham County, and they should defend the care that they were not challenging venue here. Of course, there were registered agents in St. Clair County, but this court and many others have routinely said that's a venue, okay, that's venue, but that's not a significant factor to determine where this case should be tried. And we also quoted in a brief case law that says, the fact that the chosen forum has a relationship to the litigation does not necessarily mean that it is the appropriate forum. That's from Gridley, our Supreme Court, 217, second 173. So again, we're back to our belief that taking all the facts and analyzing them with the proper focus, or as you stated in Shaw, the heart of the issue is brought to bear on all the factors when that's done. And when it's done in considering that, we're talking about care rendered in Effingham County to a patient in Effingham County that caused injury to a patient in Effingham County, and that's brought into all the factors. And the balance of those factors is weight. We respectfully submit that the court did abuse his discretion and that this case should be transferred to Effingham County. Thank you very much. Well, thank you, counsel. Justice Moore, do you have any other questions? No. Again, as I stated earlier, as when Justice Barberis, Justice Moore and I get together soon, we will discuss the case. We take the matter under advisement and issue an order due course. Thank you, gentlemen. Thank you.